IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.     ) | CRIMINAL NO. 13-CR-30156-WDS-2 |
| ) | |
| IRMA JONES and ROSALYN ROSS, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM & ORDER**

**STIEHL, District Judge:**

Before the Court is defendant Rosalyn Ross' ("Ross") motion to suppress (Doc. 27), to which the government filed a response (Doc. 29). Ross seeks to suppress inculpatory statements made on April 2, 2013, and any statements made thereafter. Neither party has requested a hearing.

BACKGROUND

According to defendant, on April 2, 2013, Ross was interviewed at her place of employment by case agent, Illinois State Police Sergeant Warren Herring ("Herring"). According to Herring's Investigative Report, Ross was informed that Herring was conducting a criminal investigation:

> Prior to speaking with ROSS, I informed her that I was investigating her employment as a PA with the Illinois Department of Human Services/Division of Rehabilitation Services (DORS) Office in E. St. Louis. I informed ROSS the interview was criminal in nature and advised her she could stop talking to us at any time and could leave at any time during the interview.

(Doc. 27-1 at 1). Ross asserts that she was in a custodial environment with a police officer, but that she was not given her rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). As a result, Ross claims that any and all statements made on April 2, 2013, should be suppressed, and that any statements made thereafter should be suppressed under the "fruit of the poisonous tree" doctrine.

In its response, the government asserts that *Miranda* warnings are not required merely because a defendant is being questioned as a suspect or focus of a criminal investigation, and, in fact, a suspect must be both in custody and subjected to interrogation before such warnings are required. The government further asserts that Ross was told that she was free to leave, could discontinue the interview at any point, that she was not formally arrested, and, therefore, Ross was not in custody for purposes of *Miranda*. As a result, the government asks the Court to deny defendant's motion.

**LEGAL STANDARD**

"*Miranda v. Arizona* requires police to read a series of warnings to suspects before putting them through custodial interrogation." *United States v. Pelletier*, 700 F.3d 1109, 1114 (7th Cir. 2012). *Miranda* warnings "protect the individual against the coercive nature of custodial interrogation," and "are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Id.* (internal quotations omitted).

The Seventh Circuit has explained:

> "Custody" is a "term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Howes v. Fields*, --- U.S. ---, 132 S.Ct. 1181, 1189, 182 L.Ed.2d 17 (2012). To determine whether someone is in custody, "the initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Id.* (internal citations, brackets, and quotation marks omitted). But this is only the first step in the

>custody analysis. As the Supreme Court recently reiterated, "[n]ot all restraints on freedom of movement amount to custody for purposes of *Miranda*." *Id.* Even if the subject would not have felt free to leave, we must still ask an additional question: "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.* at 1190. For example, few would feel comfortable speeding away from a traffic stop while the officer was writing a ticket. Still, a traffic stop is "temporary and relatively nonthreatening" and does not have the same inherently coercive character as a station house interrogation. *Maryland v. Shatzer*, 559 U.S. 98, 130 S.Ct. 1213, 1224, 175 L.Ed.2d 1045 (2010). As a result, it does not amount to "custody" under *Miranda*, even though it undoubtedly restrains the subject's movement. *Id.*

*Pelletier*, 700 F.3d at 1114-15.

## ANALYSIS

Defendant Ross has presented no evidence that there was any restriction on her freedom whatsoever as to render her "in custody," and to necessitate *Miranda* warnings. Ross merely asserts that she was in a "custodial environment," but the circumstances surrounding the interrogation prove otherwise. *See, Pelletier*, 700 F.3d at 1115 ("Determining whether an environment is coercive enough to be custodial requires an objective inquiry into all of the circumstances surrounding the interrogation." (internal quotations omitted)).

Specifically, Ross was interviewed at her place of employment, at which she had presumably arrived voluntarily, was told by the agents that she could stop talking to the agents or leave at any time, freely left the interview to attend a meeting, and was not placed under arrest. The interviewing agent even asked Ross if conducting an interview at her place of employment was an issue, to which Ross replied, it was not. (Doc. 27-1 at 1)

Ross did not present a single shred of evidence that she faced any "inherently coercive pressure" to continue the interview, or that she was not free to leave. No reasonable person would

3

have construed the circumstances faced by Ross as rendering her "in custody." Accordingly, Ross was not entitled to *Miranda* warnings, and her motion to suppress (Doc. 27) is **DENIED.**

## CONCLUSION

For the reasons stated above, Defendant Ross' motion to suppress inculpatory statements made on April 2, 2013, and any statements made thereafter (Doc. 27), is **DENIED**.

**IT IS SO ORDERED.**

**DATE: October 18, 2013**

                                                  /s/   WILLIAM D. STIEHL
                                                      **DISTRICT JUDGE**